UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHERRY LESCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:07CV1121 CDP |
| | ) |
| UNITED STATES OF AMERICA | ) |
| and LOUIS GUMPENBURGER, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

Plaintiff Sherry Lesch brings this suit seeking damages resulting from her serious injuries in an automobile accident involving several vehicles. She has sued Louis Gumpenburger, whose southbound car came into Lesch's northbound lane and hit her almost head on. She also brings a Federal Tort Claims Act suit against the United States, because as Gumpenburger's vehicle began going into the opposing lanes, it first collided with a car in the center turn lane driven by FBI Agent Dennis Rice. I conclude that Gumpenburger's negligence was the sole cause of the collision, so I assess 100% of fault to him. I find that Lesch's damages are $695,878.53. I will therefore enter judgment in favor of Lesch against Gumpenburger in that amount, and I will enter judgment in favor of the United States on Lesch's claim against it.

**Findings of Fact**

On April 25, 2005, plaintiff Sherry Lesch was injured in an automobile accident involving her own vehicle and three others. The accident happened on Highway K in O'Fallon, Missouri, near the intersection with Babble Creek Road. It was approximately 9:00 p.m., and it was dark and lightly raining. There was nothing unusual about the traffic. Lesch was traveling northbound on Highway K. The others drivers involved were: FBI Agent Dennis Rice, driving northbound ahead of Lesch; Louis Gumpenberger, driving southbound; and Timothy Frishholz, driving northbound behind both Rice and Lesch.[1]

The relevant part of Highway K has two northbound lanes, two southbound lanes, and a center left turn lane used by both northbound and southbound traffic. Babble Creek Road enters Highway K from the west. Turn arrows are painted on the center lane of Highway K near the Babble Creek intersection: one arrow points west, indicating one can turn west onto Babble Creek, and the other arrow points east, even though there is nowhere to turn towards the east at that point. East of Highway K at that point is a grassy field (and an embankment). South of Babble Creek Road on Highway K are entrances to various businesses – on the west is a Dairy Queen and on the east is a day care center.

---

[1] Lesch's claims against Frishholz were voluntarily dismissed with prejudice before trial.

Rice, going northbound on Highway K, intended to turn left (west) onto Babble Creek Road.  He  moved into the center left turn lane shortly after passing the entrance to the Dairy Queen on the west and the day care on the east.  At some point Rice realized that Gumpenberger's vehicle, going southbound, was coming directly toward him in the same center turn lane.  In an attempt to avoid a head-on collision, Rice turned sharply to the left, into the southbound lanes, even though he was not yet at Babble Creek Road.  At the same time Gumpenberger swerved partially back into the southbound lane, but then made a sharper left turn, apparently overcorrecting in an attempt to avoid hitting Rice's vehicle.  Rice felt a slight bump, and the evidence shows that the rear right corners of the cars hit each other.  The impact was very slight; the Rice vehicle had a mark from the impact but no damage requiring repair.

After swerving and having the slight collision with the Rice vehicle, Gumpenberger's vehicle continued into the oncoming northbound lanes and collided with the vehicle driven by plaintiff Lesch.  Lesch was traveling northbound in the regular traffic lane.  The impact forced Lesch's vehicle to the east (as if she had made a right turn).  Lesch was thrown from her vehicle and landed on the roadway in the farthest east of the two northbound traffic lanes.  Her vehicle ended up in a grassy area east of Route K and down an embankment.

Frishholz was driving northbound behind Lesch, in the right-hand (farthest east) traffic lane. He saw the impact ahead of him and saw Lesch being ejected from her vehicle and landing on the roadway in front of him. He tried to slow and stop, but may have hit some part of Lesch's leg. He stopped, but then as he attempted to move his car off the roadway, he somehow dragged Lesch's body some distance before stopping again.

The evidence does not show when Gumpenberger entered the center left turn lane. Gumpenberger suffered a traumatic brain injury in the accident and has no memory of it. Rice testified that he had looked before entering the center left turn lane and did not see any traffic in that lane, although he did see traffic approaching in the southbound traffic lanes. Rice estimated that he had slowed to approximately 20 mph to make the turn. When Rice saw the Gumpenberger vehicle it was already in the center lane, coming directly toward him. He estimated it to have been approximately 100 feet away. He testified that turning left was the only evasive action he had time to take, and he believed had he not done so he would have been hit head-on by Gumpenberger. Lesch saw the Gumpenberger vehicle coming into her lane just before it hit her, and she had no time to take evasive action.

Gumpenburger had been at a friend's house and had been drinking. His

blood alcohol level when he was later tested at the hospital was .113. As stated above, he has no memory of the accident. The evidence showed that he did not brake at all before the impact with either vehicle, and witnesses estimated his speed at 40 mph.

Lesch suffered serious injuries, including complex fractures of the left hip, dislocation of the left femur, a deep wound to her left leg, abdominal trauma, low back injury, and multiple cuts, bruises and abrasions. She was taken to a nearby hospital and later transferred to St. Louis University Hospital. She underwent several surgical procedures, including reduction of fractures and skin surgeries. She was eventually moved from the hospital to a rehab facility for physical and occupational therapy. She returned home on May 19, 2005, and continued to have therapy and assistance at home. By October of 2005 she was able to walk on her own. In August of 2006 she underwent total hip replacement, because although her pelvis and hip had been surgically repaired, the cartilage damage was significant and she continued to have hip pain. She then, of course, had additional physical therapy. In total, she has incurred $218,878.53 in medical bills, all of which were reasonable and necessary to treat her injuries caused by the collision.

Before the accident Lesch worked as a bookkeeper for a small business. She returned to work in November of 2005. Although her doctors had not at that time

released her for work, she wanted to try working part-time, because she was worried that her employer would not hold the job for her indefinitely and because she and her family were falling into debt and needed the money. She found returning to work difficult because sitting long periods caused pain. Eventually, in June of 2006 she was fired because she had not been putting in the necessary hours on the job. She has not worked since, and she believes she is permanently disabled. She testified that she continues to have pain when she attempts to do certain things, and that walking and other physical activity increases the pain. She cannot sit for lengthy periods without pain. She testified that she usually uses a motorized cart to do her shopping, and that she often has to rest when doing normal housework. Pain medications help somewhat but she believes they slow her down mentally and she tries not to take them. She testified that she is depressed and worries about the future, and about the financial stress her family is now under. She also has developed urinary incontinence as a result of the accident, and her doctors have not been able to find a successful treatment for this embarrassing and troubling condition.

The evidence shows that Lesch has worked steadily since she was a young teenager. She is now 39 years old. Before the accident she was physically active, able to care for others in her family and do yard work and other strenuous activity.

Before the accident the Lesches did not have debts, but now their debts are mounting. She has applied for Social Security disability benefits, but is still waiting for a determination.

Defendants produced a surveillance video that showed Lesch moving around with no difficulty, shopping, lifting heavy bags, and visiting with friends at a restaurant. The video also showed her using two shopping carts at once, pushing one and pulling the other, and then unloading the items – including many heavy items – into her car. Lesch testified that the activity shown in the video was very painful, that she had to lie down and wait for her husband to unload the car when she got back home.

Defendants pointed to other items of evidence tending to show that Lesch may have exaggerated her symptoms, including medical records where she reported to the doctors that she had recently done a lot of yard work, or where she reported to a therapist that she was able to clean house without rest breaks. Defendants also pointed out that Lesch's doctors reported that the August 2006 hip replacement surgery was successful, and that Lesch had made considerable improvement since that date. Lesch admitted that she has not sought employment since that surgery, but stated that the surgery did not really help her pain, which continues. Lesch agreed on cross-examination that she could probably do more if she took pain

medication more often and had more physical therapy.

## Conclusions of Law

This Court has jurisdiction over Lesch's claims against the government under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). The court has supplemental jurisdiction over her claims against Gumpenburger under 28 U.S. C. § 1367(a) . Missouri tort law provides the basis for my decision.

Under Missouri law, to prove a claim of negligence a plaintiff must establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused injury to the plaintiff. *Lopez v. Three Rivers Elec. Co-op, Inc.*, 26 S.W.3d 151, 155 (Mo. 2000).

A driver has a duty to operate his vehicle at a safe rate of speed under the conditions, keep a careful lookout, yield the right of way, remain on the proper side of the road, not make turns unless making sure they are safe, and take evasive action when possible to avoid a collision. *See generally* Mo. Rev. Stat. 304.010(1) (duty to drive in a careful and prudent manner); Mo. Rev. Stat. 300.200(2) (duty to obey traffic lanes); Mo. Rev. Stat. 304.351 (duty to yield right of way); *Hill v. Barton*, 579 S.W.2d 121, 128 (Mo. Ct. App. 1979) (duty to keep careful lookout).

Missouri's law of comparative fault requires the court to assess percentages

of fault to each person alleged to have been negligent. *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. 1983). I conclude that Gumpenburger, through his negligence was 100% at fault for this accident.

Rice was not negligent, and he did not breach any duty of care. Lesch and Gumpenburger argue that Rice should not have entered the left-turn lane because Gumpenburger was quickly approaching and Rice should have seen him, but I disagree. I find that Rice kept a careful lookout, was traveling at an appropriate rate of speed, signaled as required, and did all he could to avoid the accident. His evasive maneuver of making a sharp left turn even though he was not yet at the proper turning place was the only reasonable action he could have taken.

Although the evidence does not show when Gumpenburger drove into the oncoming lanes of traffic, the reasonable inferences from the testimony and from the physical layout show that he entered the center turn lane shortly before Rice saw him. Gumpenburger was negligent in many ways. He was traveling too fast for the conditions, which explains why Rice did not see him sooner (i.e., he was not there to be seen any sooner); he could have had no logical reason for entering the left turn lane as there was no place for him to be turning to at that point;[2] he drove

---

[2]The roadway has an inexplicable southbound left turn arrow painted on the surface, but there is no drive at that location into which one could turn. It was not reasonable for Gumpenburger to be attempting a turn there, since there is no where to turn into, and I do not

his car into the opposing lanes of traffic; he was not keeping any kind of lookout, and certainly not a careful lookout; and he failed to take reasonable evasive maneuvers.  The evidence shows that he simply drove into the oncoming traffic, either because he was impaired by alcohol or because he was completely inattentive.  His negligence was the complete cause of the accident and of Lesch's serious injuries.

I conclude that Lesch has proven damages of $695,878.53.  This includes past medical and other expenses in the amount of $218,878.53; expenses she is reasonably likely to incur in the future of $100,000 for medical expenses and assistive devices; and past lost earnings and pension contributions of $77,000.  I believe that Lesch should be able to return to work at some point in the future, but that she has shown that she will most likely not be able to work full-time or as consistently as she has in the past, so I assess her future lost earnings and benefits as $200,000.  Finally, I assess her non-economic damages for pain, suffering, physical restrictions, emotional distress and loss of enjoyment of life at $100,000.

## **Conclusion**

As I have concluded that Louis Gumpenburger's negligence was the sole

---

believe that he was attempting to turn.  As stated above, I believe he was not paying any attention to the direction he was traveling, whether because of alcohol consumption or inattentiveness.

cause of Sherry Lesch's injuries, and that her damages total $695,878.53, I will enter judgment in her favor against Gumpenburger in that amount. Gumpenburger will bear all taxable costs of this action. I will enter judgment in favor of the United States on Lesch's complaint against it, as FBI Agent Dennis Rice was not negligent and bears no fault for Lesch's damages. Judgment is entered separately.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 9th day of February, 2009.